UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF GEORGIA

SAVANNAH DIVISION

| | | |
|---|---|---|
| THOMAS G. MERRITT and WATERWAY ON THE OGEECHEE, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. CV410-053 |
| MARLIN OUTDOOR ADVERTISING, LTD. and WALTER M. CZURA, | ) ) ) ) ) | |
| Defendants. | ) | |

# ORDER

Plaintiff Thomas G. Merritt, who owns co-plaintiff "Waterway On The Ogeechee, Inc.," brought this ejectment and damages action against Marlin Outdoor Advertising, Ltd., and its registered agent, Walter M. Czura. Doc. 1.[1] Marlin leases roadside billboard space. *Id.* at 2. Merritt and Waterway ("Merritt") sue Marlin here, and in the process renew a state court action. *Id.* at 3; *see* O.C.G.A. § 9-2-61. Merritt says Marlin

---

[1] While Czura initially is identified as Marlin's registered agent, doc. 1 at 1-2, later in Merritt's Complaint he is alleged to be the controlling if not sole principal of the limited partnership that owns Marlin. *Id.* at 22 (veil-piercing count). For convenience only, the Court will refer to both defendants in the singular ("Marlin"), and both plaintiffs in the singular ("Merritt").

has wrongfully possessed and collected billboard rents on his land. *Id.* at 4-6. The litigation covers land/billboard leases known as "The Northern Sign/Lease," doc. 61 at 1, and the "Southern Sign/Lease." Doc. 36 at 2. Merritt thus seeks to eject Marlin and recover from it under theories of trespass, contract, fraud, unjust enrichment and punitive damages, including "monthly mesne profits" flowing from specific billboards, plus O.C.G.A. § 13-6-11 costs. Doc. 36 at 7-12, 15-22; *see also* docs. 26, 27 (Complaint Amendments).[2]

Merritt moves for partial summary judgment "regarding the issue of liability for allegations in Counts Eight (Mesne Profits), Nine (Trespass), Ten (Contract for Northern Sign Unenforceable for Failure to Satisfy Conditions Precedent), and Eleven (Unjust Enrichment, as amended) for the Lease of the *Northern* Sign." Doc. 61 at 1 (emphasis added). Defendants oppose. Doc. 73; *see also* doc. 74 (Reply). He likewise moves for partial summary judgment on "the issue of liability"

---

[2] Merritt originally raised tortious interference with business counts (Counts 6 and 12) but has since moved, over no opposition from defendants, to dismiss them. Docs. 45, 67. That motion (docs. 44-45) is granted. Note that doc. 44 is duplicate-filed at doc. 45. Similar duplicate-filings are found at docs. 61-62 and docs. 70-71. The Clerk has instructed the lawyer responsible for this to electronically file documents in a non-duplicating fashion.

on the same counts "for the Lease of the *Southern* Sign." Doc. 94 (emphasis added); *see also* doc. 100 (Response).

Those motions are before the district judge. They go to liability, not damages. It is on damages that a two-tiered discovery dispute, now before the undersigned, has emerged.[3]

## I. Third-Party Discovery

To prove his damages, Merritt served, under Fed. R. Civ. P. 45, a June 4, 2010, *documents* subpoena on a third party -- the CPA firm that Marlin uses, Aikman & Roberts, LLC. Doc. 83-1; doc. 82 at 1. Then, on June 21, 2010, he served a *deposition* subpoena *duces tecum* (hence, a "deposition-documents" subpoena) upon Marlin's CPA himself, Paul Aikman, doc. 68-1 at 5-6; doc. 82 at 2, as well as his firm. Doc. 68-1 at 2-4; doc. 83-1. To prove, for example, mesne profits, Merritt wants things like tax filings and balance-sheets data from Marlin's CPA. Doc. 68-1 at 2-6. He thus sought, for

> the two signs located at 70 highway 17, South, Richmond Hill, Georgia or Marlin Outdoor Advertising, Ltd. from May 1, 2003 to March 12, 2010 the following: 1) General Ledgers; 2) Cash Receipts Journals (or equivalent); 3) Source Documents, relates to bills and deposits; 4) Invoices to Advertisers; 5) Any accounting information

---

[3] Discovery ended July 29, 2010. Doc. 14.

3

for revenues generated; 6) Remittance Advices; and 7) Deposit Records.

Doc. 70 at 3.

Aikman has since filed an "Emergency Motion to Quash or Modify Plaintiff's Subpoena or For Protective Order." Doc. 68. He raises objections such as burdensomeness ("voluminous" and having to dig through off-site stored documents), "proprietary information" and uncompensated CPA time. Doc. 68-1 at 8-9. Aikman's counsel, Steven E. Scheer, also complains that he had difficulty communicating with Merritt's counsel, William Matson, to try and resolve the matter. Doc. 68-1 at 11-15 (recounting a lengthy, frustrating series of attempts just to get Matson on the phone, then "drop dead" responses from him); *see also* doc. 70 at 3-8 (Matson says Scheer refused to clarify his representation of the Aikman targets by filing a Notice of Appearance in this case -- but cites no legal authority requiring this, and Aikman is *not* a party; *see also* doc. 83 at 4-5).[4] The Court stayed the subpoenas pending a hearing, doc.

---

[4] While some in similar situations have formally appeared, *see, e.g., Hill v. United States*, 2010 WL 3210971 at * 9 (N.D. W.Va. July 10, 2010), the Court is aware of no legal requirement to do so -- until the non-party is haled before this Court for disobeying a subpoena *and* chooses to retain counsel. Local Rule 83.6, in that regard, contemplates the filing of a notice of appearance only when a witness comes before

69, which Aikman requests. Doc. 92.

Merritt responded by moving to hold Aikman in contempt for disobeying those subpoenas. Doc. 70. He argues that Scheer unduly stalled production, and "[t]he delay and failure to produce was intentional and calculated." Doc. 70 at 7. While Matson does not rebut Scheer's claim that Matson was hard to reach by phone, he insists "there [was] no shortage of written communications between the two." *Id.*

By affidavit Aikman explains that he received the single-page, June 4 (documents-only) subpoena from Merritt and informed Marlin's counsel that Aikman's firm would not have the majority of the type of documents sought by that subpoena -- because Marlin operates on a cash, not accrual-accounting, basis. Doc. 81 at 11-12. Aikman does not say if he made any effort to respond to the June 4 subpoena but goes on to explain that when he received the June 21 subpoenas he believed that they supplanted the first subpoena since they were "modified to reflect Aikman & Roberts being engaged by Marlin on the cash method." *Id.* at

---

the Court (e.g., on a motion to quash a subpoena, or in response to a grand jury subpoena), not when a subpoenaed third party simply wishes to contact the subpoenaing lawyer to work out compliance issues.

5

12.

Aikman also claims that "[t]he requested documentation seeks proprietary information regarding clients of Aikman and Roberts including but not limited to the disclosure of billboard locations, customer lists and revenues generated from such billboards." Doc. 68-1 at 9 ¶ 9. And, "[r]etrieving the requested documents would be very difficult due to its location and having to sort through numerous other documents to pick out the requested documentation." *Id.* ¶ 8. Finally, Aikman argueus, the one-page subpoena did not comply with Rule 45's content requirement (*i.e.*, it must, on its face, contain specific wording from Rule 45 itself). Doc. 82 at 4-7.

Merritt says that Aikman's "Proprietary Information" objection is legally groundless, and the "customer-list" portion of that objection was waived by Czura during his deposition. Doc. 83 at 7-8. Aikman also has ignored, to date, the first (document) subpoena's 28-day production period. *Id.* at 8. And Aikman's "voluminous" objection is unfounded, Merritt contends, because if the CPA firm itself had responded to Merritt's first documents-only subpoena (which packed a 28-day time-

response window), it would have decreased the number of documents to be produced on plaintiff's second, shorter time-window subpoena. Too, Aikman never did detail *how* voluminous it considered the document production to be, so his undefined conclusory assertions on that score should be disregarded. *Id.* at 8-9. Finally, says plaintiff, Scheer has mischaracterized the counsel-to-counsel phone conversations:

> Counsel for Aikman's highly touted method of a phone conversation yielded nothing other than an opportunity to claim a good faith conference to resolve the dispute, which in fact did not occur. It only yielded an opportunity to memorialize mischaracterizations of the conversation to further take the focus of the Court's attention off Aikman's and Aikman & Roberts's non-production.

Doc. 83 at 10.

The Court denies Merritt "contempt" relief. Merritt does not dispute that his June 4, one-page subpoena failed to comply with Rule 45's content requirement.[5] Doc. 70-1 at 1; doc. 82 at 11-12; doc. 85 at 6-

---

[5] As another court has explained:

> Federal Rule of Civil Procedure 45(a)(1) provides that "[e]very subpoena must ... set out the text of Rule 45(c) and (d)," which discuss protections due a person subject to a subpoena and a person's duties in responding to a subpoena. Fed. R. Civ. P. 45(a)(1). "Inclusion of the text of subdivisions (c) and (d) in every subpoena ensures that the recipient of the subpoena is fully aware of both the available options that may be exercised in contesting the subpoena as well as the recipient's obligations in responding to the subpoena." *Elam v.*

11; doc. 87 at 1-2. It thus is invalid, so any sanctions sought based on the June 4 subpoena are denied. Thus, Aikman's Motion to Quash or Modify (doc. 68) is granted as to the June 4 subpoena, and Merritt's Motion For Contempt (doc. 70) is denied on that score.

Still, Merritt seeks compliance with the June 21 subpoenas reproduced at doc. 68-1 at 2-6. Having reviewed Aikman's objections,[6] the Court nevertheless orders Aikman and his firm to comply with the

---

*Ryder Auto. Operations*, 179 F.R.D. 413, 415 (W.D.N.Y.1998).

*Finley v. Count of Martin*, 2009 WL 3320263 at * 1 (N.D. Cal. Oct. 13, 2009); *accord Kutrip v. City of St. Louis*, 2009 WL 2386072 at * 1 (E.D. Mo. July 30, 2009).

[6]   Most all his objections are baseless, though one in particular bears mention -- Aikman's conclusory claim (he supplies insufficient details) about "proprietary information regarding clients of Aikman and Roberts including but not limited to the disclosure of billboard locations, customer lists and revenues generated from such billboards." Doc. 68-1 at 9 ¶ 9. First,

> [n]o accountant-client communication privilege existed at common law. Additionally, the Supreme Court, as well as lower federal courts, have held that there is no general accountant-client privilege nor a general work-product doctrine for an accountant's work. On the same basis, communications to an attorney-accountant are not privileged if they are made for the purpose of securing accounting advice or assistance. Thus, all substantive information contained in an accountant's work papers pertaining to the financial affairs of the accountant's client are proper subjects for discovery.

FEDERAL TESTIMONIAL PRIVILEGES § 10:9 (*Accountant-client privilege*) (2d ed. Nov. 2009) (footnotes omitted). Second, the burden is on the objector to show that disclosure will cause "substantial economic harm," *In re S3 Ltd.*, 242 B.R. 872, 87 (Bankr. E.D.Va. 1999); *Motto v. Corr'l Med. Serv.*, 2009 WL 347432 at * 4 (S.D. W.Va. Feb. 9, 2009), and that showing has simply not been made here.

8

June 21, 2010 subpoenas within 14 days of the date this Order is served, and the Court upon good cause will grant Merritt a limited (to the Aikman production) extension of discovery on that score.

Aikman, meanwhile, wants to be compensated for his time. Doc. 68-1 at 8-9. To that end,

> [i]t is the Court's obligation to protect any person who is not a party to the underlying lawsuit from significant expense resulting from the inspection and copying which was commanded pursuant to Rule 45. Fed. R. Civ. P. 45(c)(2)(B). The rule is mandatory. *R. J. Reynolds Tobacco v. Philip Morris, Inc.*, 29 Fed. Appx. 880, 88283 (3rd Cir.2002). The "court must protect the nonparty by requiring the party seeking discovery to bear at least enough of the expense to render the remainder 'nonsignificant.'" *Linder v. Calero-Portocarrero*, 251 F.3d 178, 182 (D.C.Cir.2001).

*Crandall v. Denver, Colorado*, 2007 WL 162743 at * 1 (D. Colo. Jan. 17, 2007). That does not mean that Merritt must absorb all of the cost of compliance. The Court considers

> (1) whether the nonparty has an interest in the outcome of the case; (2) whether the nonparty can more readily bear its costs than the requesting party; and (3) whether the litigation is of public importance. *Id.* (citations omitted). The cost shifting is not limited to costs of inspection and production, but those "significant expenses resulting from the inspection and copying." *Klay v. All Defendants*, 425 F.3d 977, 98384 (11th Cir.2005).

*Id.*; *see also* 9A WRIGHT & MILLER, FED. PRAC. & PROC. § 2459 (2010) ("it

perfectly is possible for a subpoena duces tecum to impose an undue burden, or be subject to a protective order, even though it seeks relevant evidence."). Aikman may seek from Merritt $200 to cover his document-retrieval time, and if he in good faith believes he is entitled to more than that he may move this Court for it.[7]

## II. Second-Party Discovery

In further proof of his damages, Merritt also served Marlin with written discovery and has deposed, *inter alia*, Czura and Czura's assistant, Bruce Weldon. Docs. 54, 78, & 81. Upset with Marlin's responses, Merritt moves under Fed. R. Civ. P. 37 for the ultimate sanction against it: Strike its Answer. Doc. 79 at 19. Short of that, he wants this Court to compel Marlin's responses. *Id.* Plaintiff cites written discovery aimed at uncovering things like profit-based

---

[7] As one treatise explains:

> The district court is not obligated to fix the costs in advance of production, although this often will be the most satisfactory accommodation between imposing expense on the subpoenaed party while protecting the party seeking discovery from excessive costs by way of an award under the rule. In some instances, it may be preferable to leave the matter uncertain, determining costs after the materials have been produced, provided that the risk of this uncertainty is disclosed fully to the discovering party.

9A WRIGHT & MILLER, FED. PRAC. & PROC. § 2463 (2010).

information on the two signs. Doc. 79-1 at 4-5; doc. 79-2 at 4-5. He then details a series of defense evasions and miscues which, he contends, justifies the Answer-striking sanction. Doc. 79 at 6-7 (arguing that Marlin's state income tax returns show that Marlin could have, but has refused to reveal, net income from the subject signs); *id.* at 7-8 (recounting Czura's conduct aimed at concealing the fact that "Czura is draining funds from Marlin to himself and Marlin of Georgia, but [swearing under oath] that no transfer of funds are coming out of Marlin's accounts to Marlin of Georgia or himself. This conduct is evasive."); *id.* at 8 (Marlin at first objected to identifying its own bookkeeper, then Czura testified, unbelievably, that he could not remember her address); *see also id.* at 8-19 (similar "evasion" accusations regarding things like Marlin's income taxes, its income and expense records, commingling of assets, the start and stop date of the sign leases, Marlin's customers, and Marlin's recordkeeping). And on the documents-only subpoena, Aikman failed to satisfy Rule 45(c)(2)(B)'s 14-day, written-objection requirement (Scheer's letters, he insists, don't count). Doc. 83 at 6.

Meanwhile, Merritt has loaded up the record with a substantial number of a South Carolina court documents showing divorce proceedings, and personal financials, involving Czura and his wife. Doc. 98. Merritt attests to the veracity of these documents (many go to show Czura's net worth, which is substantial), and he is "prepared to argue the relevancy of [them], if necessary," if this Court affords him oral argument on his Motion to Compel/Sanctions. *Id.* at 3.

In response, Marlin first insists that Merritt has not complied with the Local Rule 26.5 and Rule 37(a)(1) duty-to-confer requirement. Doc. 88 at 1 ¶ 1. To be sure,

> [t]his prerequisite is not an empty formality. . . . [T]he requirement of a certificate cannot be satisfied by including with the motion copies of correspondence that discuss the discovery at issue. Rather, both attorneys must certify that they conferred on the discovery issues in an *attempt to resolve* them. The Court is unwilling to decipher letters between counsel to conclude that the requirement has been met.

*Ross v. Citifinancial, Inc.*, 203 F.R.D. 239, 240 (S.D. Miss. 2001) (emphasis added); *accord Aponte-Navedo v. Nalco Chemical Co.*, 268 F.R.D. 31, 40-41 (D.P.R. 2010) (plaintiff employees did not comply with meet and confer requirements, and thus their motion to compel

production of documents had to be denied, in action against employment-discrimination action, where they did not specify if any attempt had been made to discuss discovery dispute either personally or through telephone conference, and they sent only two emails were defendant; that failed to show good faith effort to reach agreement, but plaintiffs' point of view over objections made). Merritt cites only "copies of correspondence that discuss the discovery at issue." *Ross*, 203 F.R.D. at 240; *see* doc. 91 at 2-3.

Thus, the parties are directed to confer within 14 days and submit a Discovery Status Report to this Court within 7 days of that, including a joint motion to a very limited extension of discovery time (to in good faith resolve all *still*-pending discovery disputes, of which the Court expects *none*). The Court warns Marlin, however, that a preliminary review of the discovery materials militates against some its current objections.[8] Also, given the expiration of discovery and extensive detail set forth in the heavy briefing surrounding this discovery dispute, good

---

[8] For example, if Merritt asks for financial information that Marlin can obtain from its accountant, then it should provide that information, rather than blithely insist that it does not have same and that Merritt can obtain it from the very accountant who himself is resisting discovery before this Court. *See* doc. 88 ¶¶ 7, 10, 18; doc. 91 at 6 (replying to "7 and 10"); doc. 91 at 11-12 ¶ 18.

cause exists to incorporate, into his existing discovery requests, the clarifications that Merritt has made in his briefs. *See* doc. 79, 91. Put another way: now that Merritt has clarified in his brief what he wants, Marlin shall completely and thoroughly respond to the requested discovery.

To that end, the Court will brook no weasel-worded evasions. For example, the Court previously ruled that Merritt is entitled to profit- and contract-based damages, and nothing prevents Merritt from making the required showing for, then discovery of, punitive damages. Doc. 22 at 3-6. Too, Merritt has pled commingling of assets (to pierce Czura's corporate veil). So, contrary to Marlin's objection, doc. 88 at 4 ¶ 11, he in fact is entitled to discovery on that score.

Still, many of Marlin's "briefing" explanations appear to fully respond to Merritt, or at least satisfactorily explain why Marlin has not responded to specific discovery requests. *See, e.g.*, doc. 88 at 6 ¶ 16. Again, the parties shall *personally* confer *in good faith* and the Court expects them to resolve *all* pending discovery disputes.

Accordingly, plaintiffs' unopposed motion to dismiss Counts 6 and

12 from their Complaint, as amended, is **GRANTED**. Docs. 44-45. Their Motion to Extend discovery, doc. 80, is **GRANTED** consistent with the directions set forth above. The motion of Paul Aikman and Aikman & Roberts, LLC, to quash or modify subpoenas, is **GRANTED** in part and denied in part, doc. 68, and their request for oral argument, doc. 92, is **DENIED**. Finally, plaintiffs' Motion to Compel or for Contempt (docs. 70-71) is **DENIED**, as is their Motion for Sanctions/Compel. Doc. 79.

**SO ORDERED** this 15th day of September, 2010.

/s/ G.R. Smith
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT of GEORGIA