IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

THOMAS G. MERRITT and            )
WATERWAY ON THE OGEECHEE,         )
INC.,                            )
                                 )
        Plaintiffs,              )
                                 )
v.                               )      CASE NO. CV410-053
                                 )
MARLIN OUTDOOR ADVERTISING,      )
LTD. and WALTER M. CZURA,        )
                                 )
        Defendants.              )
                                 )

## O R D E R

Before the Court are three Motions in Limine filed by
Plaintiffs Thomas G. Merritt and Waterway on the Ogeechee,
Inc. ("Waterway") (Docs. 112, 113, 114) and six Motions in
Limine filed by Defendants Marlin Outdoor Advertising, Ltd.
("Marlin") and Walter M. Czura (Docs. 115, 117, 118, 123,
124, 129).  For the following reasons, two of Plaintiffs'
motions (Docs. 112, 113) are **DENIED**; Plaintiffs' Motion in
Limine Regarding the Defense of Ratification (Doc. 114) is
**GRANTED IN PART** and **DENIED IN PART**; five of Defendants'
motions (Docs. 117, 118, 123, 124, 129) are **DENIED**; and
Defendants' Motion in Limine Regarding Criminal Convictions
(Doc. 115) is **GRANTED**.[1]

---

[1] Plaintiffs filed a Motion in Limine to Exclude Offer to
Compromise.  (Doc. 130.)  In response, Defendants agreed

**BACKGROUND**

This case stems from two lease agreements for the placement of billboards held by Defendants on property purchased by Plaintiff Merritt.   In September of 1998, Defendants obtained a lease to place a billboard in the southernmost corner of a parcel of property along U.S. Highway 17 in Bryan County, Georgia ("Southern Lease"). (Doc. 73 at 1; Doc. 61 at 1.)   At that time, the property was owned by Mr. Steven Way.   (Doc. 73 at 1.)   As part of the lease agreement, Defendants agreed to allow Mr. Way to use one of the four faces of the billboard to advertise his business—a family campground.   (Id.; Doc. 61 at 2.)   In 2001, Mr. Way sold the property to the Testamentary Trust of Nettie Wade Thomas ("Thomas Trust").   (Doc. 61 at 2.)

On May 8, 2003, Wade Simmons signed an agreement with Defendants purporting to lease a portion of land in the northernmost corner of the property adjacent to the highway ("Northern Lease") for the purpose of erecting a second billboard.   (Doc. 73 at 2; Doc. 61 at 3.)   Wade Simmons was the brother of Walter Simmons who, along with his wife, were the trustees for the Thomas Trust.   (Doc. 61 at 3.) Defendants contend that Wade Simmons was the manager of the

_____

that offers of compromise are not admissible.   (Doc. 131.) Accordingly, Plaintiffs' motion is **GRANTED**.

campground property and responsible for collecting the rent due under the lease for the southern billboard. (Doc. 73 at 1-2.) In addition, Defendants claim that Wade Simmons represented himself to be the trustee of the Thomas Trust. (Id. at 2.) According to Defendants, Wade Simmons informed them that, as manager of the campground and trustee of the Thomas Trust, he had full authority to enter into agreements to lease portions of the property. (Id. at 2.) Plaintiffs, however, contend that Wade Simmons did not have authority to enter into any lease agreements. (Doc. 61 at 3-4.) Also, both sides agree that Wade Simmons was not a trustee of the Thomas Trust. (Doc. 73 at 3.)

The Southern Lease, which commenced sometime after September 1998, was for a term of ten years. (Doc. 1, Ex. A1.) It also stated that "[n]either Lessee nor Lessor is bound by any stipulation, representation, or agreement not printed or written on this lease." (Id.) The Northern Lease was executed on May 8, 2003 for a term of 150 years. (Doc 1, Ex. B.) The terms of this lease called for Defendants to place a sign along Highway 17 advertising Plaintiffs' campground in exchange for Defendants' use of the one face of the southern billboard reserved for the property owner. The new sign, however, was later removed by the Georgia Department of Transportation ("DOT") because it

3

was located in the right-of-way of Highway 17.  (Doc. 100 at 5-6.)  Also, the Northern Lease states that it is contingent upon receipt of all permits and that Defendants may terminate the lease if at any time the permits for the sign are revoked.[2]  (Doc 1, Ex. B.)  Defendants applied for and received a permit authorizing placement of the billboard contemplated in the Northern Lease.  (Doc. 61 at 4.)  The permit application listed Wade Simmons as the owner of the property.  (Id.)  Defendants made all payments under the terms of the lease, which were deposited in the campground's checking account.  (Doc. 73 at 3.)

On July 9, 2004, Plaintiff Merritt purchased the property from the Thomas Trust.  (Id. at 4.)  As part of the sale, the Thomas Trust stated that it never agreed to the Northern Lease and that the billboard was there without the Thomas Trust's permission.  (Id.)  In recognition of this statement, the Thomas Trust assigned to Plaintiffs "any and all claims they have or may have against Marlin Outdoor

---

[2] The lease states that

> [i]f at any time the erection, placement, posting, painting, illumination, or maintenance of its signs on the demised premises is prohibited by any law, ordinance, or authority, or building permits are either not obtained or revoked, or if such activity becomes unprofitable within the sole judgment of Lessee, Lessee may terminate this lease by giving Lessor thirty (30) days advance notice of such termination.

(Doc. 1, Ex. B.)

4

Advertising Ltd." Id. In October of 2004, Plaintiffs contacted Defendants and requested the removal of the northern sign. (Id. at 61.) Defendants refused to remove the northern sign. However, on March 14, 2008, the DOT concluded that the permit for the northern sign was invalid because the application listed an incorrect property owner. (Doc. 1, Ex. C at 4.) Based on this conclusion, the DOT declared that the "permit was void from its inception." (Id.) As required by the DOT, Defendants timely removed the northern billboard and pole, but left behind the foundation—a twenty-seven-foot hole in the ground, encased in concrete and capped with a steel cover. (Doc. 61 at 6-7.)

On February 26, 2010, Plaintiffs filed a thirteen count complaint[3] against Defendants. (Doc. 1.) The complaint alleges claims for ejectment, mesne profits, trespass to realty, unjust enrichment, breach of contract, unenforceability of contract, implied breach of contract, fraud, tortious interference of business, piercing the corporate veil, and punitive damages. (Docs. 1, 26.) Plaintiffs filed two separate motions for partial summary judgment, seeking summary judgment on their claims for mesne

---

[3] Plaintiffs later amended their complaint, adding one count and replacing another. (Doc. 26.) For the purposes of the remainder of this order, the Court will refer to the amended complaint as simply the complaint.

profits, trespass, unenforceability of contract, and unjust enrichment based on both the Northern Lease (Doc. 61 at 1) and Southern Lease (Doc. 94 at 1).  With respect to the Northern Lease, Plaintiffs argued that a valid contract was never formed because the lease was conditioned on Defendants obtaining the necessary permits for the northern billboard. (Doc. 61 at 8.)  Plaintiffs reasoned that even though the permit was applied for and granted, the DOT's later declaration that the permit was void from its inception precluded a finding that the lease was ever effectuated. (Id.)

With respect to the Southern Lease, Plaintiffs argued that the Southern Lease had expired, and Defendants failed to remove the structure, including its base, continuing to collect rental income from the billboard.  (Doc. 94 at 10-11.)  Also, Plaintiffs contended that Defendants' attempted modification of the Southern Lease, resulting in Defendants obtaining control of the one panel on that billboard reserved for the property owner, was ineffective.  (Doc. 94 at 12.)  As a result, Defendants committed a trespass on May 8, 2003 when they took control of that advertising space. (Id.)  Defendants did not file any dispositive motions.

On March 18, 2011, the Court denied Plaintiffs' Motion for Summary Judgment with respect to the Northern Lease, and

granted in part their motion with respect to the Southern Lease. (Doc. 105.) In the order, the Court concluded that the DOT's revocation of the permit and declaration that it was void from its inception did not render the lease void and Defendants actions a trespass. Id. at 11.) Regarding the Southern Lease, the Court determined that factual issues remained concerning whether the parties validly modified the terms of the lease. (Id. at 15.) In addition, the Court granted Plaintiffs partial summary judgment based on Defendants admitted failure to remove the southern billboard upon the expiration of the Southern Lease. (Id. at 16.)

**ANALYSIS**

I.      PLAINTIFFS' MOTION IN LIMINE REGARDING AGENCY

In this motion, Plaintiffs seek to prohibit Defendants from making any reference that Wade Simmons may have been the agent of either the Thomas Trust, or Walter and Cheryl Simmons. (Doc. 112 at 1.) Plaintiffs reason that such testimony would be irrelevant, confusing, and prejudicial because Defendant Czura had admitted that he believed Wade Simmons to be a trustee, not an agent. (Id.) In response, Defendants contend that issues of fact remain whether Wade Simmons, acting as agent for the Thomas Trust, had authority to enter into the lease agreements. (Doc. 119 at 1.)

7

For evidence to be relevant, it must "hav[e] any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. While generally admissible, "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Id. 403. In addition, relevant evidence may be excluded if its admission would result in "undue delay, waste of time, or needless presentation of cumulative evidence." Id.

While it is difficult to assess the relevancy of this evidence absent the context in which it is offered at trial, the Court's inclination is that almost any evidence tending to show that Defendant Czura thought Wade Simmons possessed the authority to enter into the lease agreements would be relevant at trial. While Plaintiffs focus on Defendants' stipulation that Defendant Czura believed Wade Simmons to be acting as a trustee, that is only one possible theory regarding the appearance that Wade Simmons had authority to enter into the lease agreements. Therefore, the Court is currently unable to determine that such evidence would be irrelevant, confusing, or prejudicial. Accordingly, Plaintiffs' motion (Doc. 112) is **DENIED**. If necessary due

to the context in which Defendants offer this evidence, Plaintiffs may renew their objection at trial.

II.      PLAINTIFFS' MOTION IN LIMINE REGARDING THE CHARACTERIZATION OF CAMPING AGREEMENTS

In this motion, Plaintiffs seek to prohibit Defendants from characterizing the grant of licenses for campers to stay at the campground as leases or refer to campers as tenants.   (Doc. 113 at 1.)   Plaintiffs reason that such testimony would be irrelevant, confusing, and prejudicial because the grant of a permit to camp on the property is wholly different from leasing out a portion of the property. (Id. at 3-4.)   In response, Defendants point to deposition testimony that gives the impression there were long-term tenants on the property that leased their camping area. (Doc. 121 at 1-2.)

At this point, the Court is unable to conclude that this evidence would be inadmissible.   The authority and practice of Wade Simmons entering into leases with individuals on behalf of the campground is relevant to the issue of whether he possessed, or appeared to possess, the authority to enter into the billboard leases with Defendants.   In addition, while this may be a simple case of a deponent using a inaccurate term to describe the long-term

camping agreements, Plaintiffs can easily clarify their position at trial.   Accordingly, Plaintiffs' motion (Doc. 113) is **DENIED**.   If necessary, Plaintiffs may renew their objection at trial.

III.    PLAINTIFFS' MOTION IN LIMINE REGARDING DEFENSE OF RATIFICATION

In this motion, Plaintiffs seek to prohibit Defendants from introducing any evidence regarding Defendants' payment for the Northern Lease, including where the money was deposited, how it was used, whether it was returned to Defendants, and whether the property owners gained any economic benefit.   (Doc. 114 at 1.)   Plaintiffs reason that such testimony would be irrelevant, confusing, and prejudicial because the Court has previously denied Defendants' request to amend their answer to add the affirmative defense of ratification.   (Id. at 7-11.)   In response, Defendants contend that the issue of payment is relevant because it shows the existence of a contract. (Doc. 120 at 1.)   In addition, Defendants contend that they should be permitted to raise the defense of ratification because Plaintiffs' prior knowledge of that defense means they would not be prejudiced by Defendants' failure to raise it earlier.   (Id. at 1-2.)

At this point, the Court is unable to conclude that the entirety of this evidence would be inadmissible.   The fact that Defendants routinely paid according to the terms of the purported lease is clearly relevant to the issue of whether Defendants believed they were lawfully permitted to place billboards on Plaintiffs' property.   However, parts of this testimony may be inadmissible.   For example, where the lease payments were deposited and how that money was used may be irrelevant to the issue of any lease's validity. Furthermore, Defendants are clearly incorrect regarding their possible use of a ratification defense.   The Court has previously ruled that to include such a defense at this time would be prejudicial to Plaintiffs.   (Doc. 52.)   For these reasons, Plaintiffs' motion (Doc. 114) is **GRANTED IN PART** and **DENIED IN PART**: Defendants may offer evidence that they made payments according to the terms of the lease.   However, Defendants are prohibited from presenting a ratification defense to the jury, including the introduction of evidence concerning where the lease payments were deposited or how the lease payments were used.   If necessary based on the

context within which this testimony is offered, Plaintiffs
may renew their objection at trial.

IV.      DEFENDANTS' MOTION IN LIMINE REGARDING CRIMINAL
         CONVICTIONS

In this motion, Defendants seek to prohibit Plaintiffs
from introducing evidence of Defendant Czura's January 13,
1982 conviction for conspiracy to import marijuana.  (Doc.
115.)   Defendants reason that the conviction is not
admissible under Federal Rule of Evidence 609(b) because
more than ten years has elapsed from the date of the
conviction.   In response, Plaintiffs contend that the
conviction should not be excluded because Defendant Czura
has not demonstrated a propensity for truthfulness since
that conviction.  To this end, Plaintiffs cite a litany of
administrative adjudications and other alleged acts of
deceit that they claim show Defendant Czura has a long
history of untruthfulness.

Presumably, Plaintiffs are arguing that the exception
in Rule 609(b) should apply to this conviction.  According
to that rule, a court may admit evidence of a conviction
greater than ten years old if "the court determines, in the
interests of justice, that the probative value of the
conviction supported by specific facts and circumstances
substantially outweighs its prejudicial effect."   Fed. R.

Evid. 609(b).  The problem with Plaintiffs' argument is that the initial conviction is not one involving an act of dishonesty or false statement.   Therefore, Plaintiffs' characterization as the marijuana conviction as the start of a long history of untruthfulness is exceedingly inaccurate. In any event, the Court finds that the probative value of the conviction does not outweigh its prejudicial effect. Accordingly, Defendants' motion (Doc. 115) is **GRANTED**.

V.      DEFENDANTS' MOTION IN LIMINE REGARDING DEFENDANTS'
        FINANCIAL CONDITIONS

In this motion, Defendants seek to prohibit Plaintiffs from introducing evidence concerning their financial condition.  (Doc. 117.)  Defendants reason that evidence of their financial condition is irrelevant because punitive damages are inappropriate in this case.  (Id. at 1-3.)   In response, Plaintiffs contend that this evidence is relevant because punitive damages are appropriate in this case. (Doc. 134 at 1-3.)

The Court is somewhat confused by Defendants' contention that punitive damages are not an issue in this case.  To date, the Court has made no such ruling by virtue of the fact that Defendants have never asked for one.   In fact, Defendants declined to file any dispositive motions

with respect to any of Plaintiffs' claims.[4]   The only dispositive motions in this case were filed by Plaintiffs, eventually resulting in the Court granting Plaintiffs summary judgment with respect to one of their claims because Defendants failed to offer any response in opposition. (Doc. 105 at 15-16.)   As a result, the issue of punitive damages is still one that is before this Court. Accordingly, Defendants motion (Doc. 117) is **DENIED**.

VI.   DEFENDANTS' MOTION IN LIMINE REGARDING PRIOR CIVIL CASES AGAINST DEFENDANTS

In this motion, Defendants seek to prohibit Plaintiffs from introducing evidence of Defendant Czura's divorce proceedings and what Defendants refer to as a South Carolina case involving Defendants and issues of fraud.   (Doc. 118.) Defendants reason that evidence of the divorce proceeding is irrelevant, while evidence from the South Carolina case is irrelevant and prejudicial.   (Id.)   In response, Plaintiffs contend that the divorce proceedings contain evidence of Defendants' net worth, which is relevant to their claim for punitive damages.   (Doc. 137 at 1-3.)   In addition, Plaintiffs argue that evidence of a South Carolina Department of Transportation ruling that Defendants

---

[4]   To the extent Defendants are improperly seeking a dispositive ruling on Plaintiffs' claim for punitive damages in their Motion in Limine, that request is **DENIED**.

conducted a sham business enterprise is relevant and proper character evidence under Rule 608(b).   (Id. 3-7.)

At this point, the Court is unable to conclude that this evidence would be inadmissible.   With respect to the divorce proceedings, the Court has previously stated that it has made no ruling regarding the issue of punitive damages. Therefore, to the extent these records are properly offered to show Defendants' net worth, they may be admissible. However, the Court is aware of the possible prejudicial nature of evidence regarding Defendant Czura's divorce. Therefore, it is highly likely that the Court will require Plaintiffs to redact any reference to Defendant Czura's divorce when offering this evidence.

Regarding the mysterious South Carolina case involving issues of fraud and the Defendants, the Court cannot even be sure the parties are talking about the same proceeding. Defendants refer to it only as a South Carolina case involving issues of fraud.   Plaintiffs list several acts of Defendants, along with some quasi-judicial proceedings, that they say are admissible under Rules 404(b) and 608(b). Plaintiffs are likely incorrect on both accounts.   Rule 404(b) prohibits evidence of prior wrongful acts unless they are used to establish "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake,

or lack of accident." Fed. R. Evid. 404(b). Plaintiff simply wants to use them to show Defendants have a propensity for untruthfulness, which is precisely what Rule 404(b) prohibits. With respect to Rule 608(b), it allows a witness to be cross-examined regarding specific instances of prior conduct, but expressly prohibits the introduction of extrinsic evidence, which is exactly what Plaintiffs seek to do in this case. Under Rule 608(b), you may inquire as to a specific instance of prior conduct, but you are stuck with the answer the witness provides—"extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness." Fed. R. Evid. 608(b). In any event, the Court is unable to grant Defendants' motion at this time because it cannot be sure what civil case Defendants seek to exclude. Without knowing anything more than it is a South Carolina case involving Defendants and issues of fraud, the Court cannot grant Defendants the relief they seek. Accordingly, Defendants' motion (Doc. 118) is **DENIED**.

VII.     DEFENDANTS' MOTION IN LIMINE REGARDING DEFENDANTS' PRIOR BAD ACTS

In this motion, Defendants seek to prohibit Plaintiffs from introducing evidence that Defendant Czura was disbarred

from the practice of law in 1983 and that the Defendants failed to file tax returns in Georgia.   (Doc. 123 at 1.) Defendants reason that the prejudicial nature of this evidence substantially outweighs any probative value it may offer, and that it is improper character evidence under Rule 404(b).   In response, Plaintiffs contend that the evidence of disbarment is relevant as to Defendant Czura's character for truthfulness and is admissible under Rule 608(b).

Here again, Plaintiffs appear to misunderstand Rule 608(b).   This rule allows you to cross-examine a witness about specific instances of conduct that indicate their character for truthfulness.   However, the rule expressly forbids the use of any extrinsic evidence showing past conduct to attack the witness's character for truthfulness. Fed. R. Evid. 608(b).   For example, Plaintiffs may ask if Defendants failed to file Georgia tax returns, but must live with the answer provided.   Rule 608(b) prohibits them from introducing any evidence that Defendants, in fact, failed to file the returns.

At this point, however, the Court is unable to conclude that any reference to this evidence would be inadmissible. As noted above, Rule 608(b) allows Plaintiffs to inquire into these instances of prior conduct.   In addition, it is difficult to conclude that the prejudicial nature of this

evidence would render it inadmissible under Rule 403 absent the context in which it is offered.   Therefore, Defendants' motion (Doc. 123) is **DENIED**.   They may renew their objections at trial.   However, Plaintiffs are reminded of the prohibition in Rule 608(b) concerning the use of extrinsic evidence to show specific instances of prior conduct.   In light of this rule, it is highly unlikely that the Court will allow Plaintiff to introduce this evidence.

VIII.   DEFENDANTS' MOTION IN LIMINE REGARDING PRIOR BILLBOARD PERMITS

In this motion, Defendants seek to prohibit Plaintiffs from introducing evidence that the DOT voided the permit for the northern billboard. (Doc. 124 at 1.) Defendants reason that the validity of the DOT permit is not an issue in this trial because the Court has previously ruled the invalidation of the permit had no effect on the Northern Lease. (Id. at 2.) In response, Plaintiffs appear to reargue their contention that the Northern Lease was never formed because the formation first required Defendants to obtain a valid permit. (Doc. 135 at 2-3.) Plaintiffs contend that this evidence is relevant because a jury[5] could interpret the lease agreement as requiring Defendants to

_____

[5] Yet again, Plaintiffs are completely incorrect regarding the law. It is the Court, not the jury, who construes the meaning of a contract. See ALEA London Ltd. v. Woodstock, 286 Ga. App. 572, 576, 649 S.E.2d 740, 744-46 (2007).

obtain a valid permit as a condition precedent to the lease's formation. (Id.)

The Court is confused by Plaintiffs' position, which appears to completely ignore the Court's earlier ruling on this issue.[6]   In its previous order, the Court interpreted the contract and concluded that the lease was terminable by the lessee if the necessary permits were either not obtained or later revoked. (Doc. 105 at 11.)   If it was not clear in the prior order, the Court wishes to point out the absurdity of Plaintiffs' contention that Defendants trespassed for five years because, while they initially obtained a valid permit, the Georgia DOT later revoked the permit and declared it void from its inception.  Even though Plaintiffs may disagree, the issue with the Northern Lease is that Wade Simmons may have lacked the authority to enter into the lease agreement, not that the lease was never formed.  In any event, the Court concludes that the issue of the permit's revocation is not relevant to whether the Northern Lease was ever formed.  However, the Court is unwilling to decide, absent the context of trial, that it is not relevant for some other purpose.  Therefore, Defendants' motion (Doc.

---

[6] A large part of this problem is that Defendants never sought to dismiss or obtain summary judgment with respect to Plaintiffs' claims based on the Northern Lease.

124) is **DENIED** at this time.   Defendants may renew their objection at trial.

IX.      DEFENDANTS' MOTION IN LIMINE REGARDING CERTIFICATE OF AUTHORITY

In this motion, Defendants seek to prohibit Plaintiffs from introducing evidence that Defendant Marlin did not obtain a certificate of authority from the Secretary of State of Georgia before conducting business in the state as a foreign corporation.   (Doc 129 at 1.)   Defendants reason that this evidence is irrelevant and unduly prejudicial. (Id. at 1-2.)   In response, Plaintiffs contend that this evidence shows Defendants' character for untruthfulness and, as a result, is admissible under Rule 608(b).

The Court need not beat a dead horse, but only points out Plaintiffs' incorrect understanding of Rule 608(b).   In fact, after reading Plaintiffs' various responses, the Court is left with the distinct impression that Plaintiffs' entire trial strategy is built on the notion that they can convince a jury that Defendant Czura is a bad guy.   Even assuming this to be true, the Federal Rules of Evidence do not allow for this style of litigation.   The issues at trial will involve Defendants' actions with respect to the controversy that forms the basis of the dispute, not Defendant Czura's alleged past transgressions.   Plaintiffs would be well

served to keep this in mind in the event this case results in a trial.

With respect to Defendants' motion, the Court is skeptical that this evidence will be relevant to any issues presented at trial. Absent the context of trial, however, the Court is currently unable to conclude that this evidence would be inadmissible. Accordingly, Defendants' motion (Doc. 129) is **DENIED**. Defendants may renew their objection at trial.

### CONCLUSION

For the foregoing reasons, two of Plaintiffs' Motions in Limine (Docs. 112, 113) are **DENIED**; Plaintiffs' Motion in Limine Regarding the Defense of Ratification (Doc. 114) is **GRANTED IN PART** and **DENIED IN PART**; five of Defendants' Motions in Limine (Docs. 117, 118, 123, 124, 129) are **DENIED**; and Defendants' Motion in Limine Regarding Criminal Convictions (Doc. 115) is **GRANTED**.

SO ORDERED this _30ᵗʰ_ day of March 2012.

WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

21